UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD WARKENTINE, an individual; and DANIEL TANKERSLEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>HECTOR J. SORIA; *et. al.*<br><br>Defendants. | 1:13-cv-01550-LJO-MJS<br><br>MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (DOC. 44) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a

U.S. District Judge from outside the Eastern District of California.

## II. INTRODUCTION

Plaintiffs Edwards Warkentine and Daniel Tankersly owned and operated junkyards in Fresno County. They allege that they were targeted for prosecution for the benefit of neighboring junkyard owners and their associates in Mendota City government. Plaintiffs seek to recover under Section 1983 based on alleged violations of their constitutional rights. The City of Mendota, along with defendants who are municipal officials or employees, moves to dismiss Plaintiffs claims on the basis that a) Plaintiffs inadequately plead that the City maintained a policy or custom that disfavored Plaintiffs; b) claims against municipal employees and officials failed to allege sufficient detail; c) takings claims were unripe and d) equal protections claims failed to establish grounds for liability.

## III. THRESHOLD ISSUES

Municipal defendants were identified by title or position in Plaintiffs' original compliant, but not in their First Amended Complaint (FAC). Doc 40. Defendants adopt this information by reference in their Memoradum (Doc. 44 at 7) and Plaintiffs do not object to this incorporation in their Opposition. The Court will analyze Defendant's Motion to Dismiss assuming that this information is undisputed. However, because this information is critical to the sufficiency of Plaintiffs' claims, the complaint must be amended so that it stands alone. This Court ORDERS Plaintiffs to amend its complaint to harmonize all assertions of fact. Plaintiff is cautioned that this is the second opportunity this Court has offered it to correct its pleadings (*see* Doc. 31) and that it is within a district court's discretion to deny a plaintiff leave to amend if it determines that "allegation of other facts consistent with the challenged pleading could not possibly cure [deficiencies]." *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).

## IV. FACTUAL BACKGROUND

Plaintiffs Edward Warkentine and Daniel Tankersly own various real properties and operate junk yards in Fresno County. FAC at ¶¶ 3-4, 64.  They believe that they have been targeted unfairly for prosecution by associates of their competitors in positions of authority. Plaintiffs point to the fact that

their competitors were issued conditional use permits to operate their nearby businesses in "M-1" zones, while Plaintiffs were denied similar permits. FAC at ¶ 65. Plaintiffs point to a public statement, allegedly made by Defendant Joseph Amador (a Mendota City Council Member) singling out Plaintiffs for prosecution. FAC at ¶ 71.

In August of 2010, Defendant City of Mendota (The City) served a notice to abate public nuisance (2010 Notice) seeking the removal of allegedly inoperative vehicles. FAC at ¶ 30; Mem. of Points and Authorities in Supp. Of Defs.' Mot. to Dismiss FAC, Doc. 44  (Defs.' Mem.), at 2. Plaintiffs allege that Defendant Hector Soria (Mendota City Code Enforcer) and other defendants trespassed on Plaintiffs' properties prior to effecting service to obtain information needed for the 2010 Notice. FAC at ¶ 30.

Plaintiffs allege that Defendants Soria, Gerry Galvin (Mendota City Police Officer) and Bryce Atkins (Mendota City Director of Support Operations) served the 2010 Notice on Mr. Warkentine, but that the property described in it was owned by Mr. Tankersly. FAC at ¶ 30. Plaintiffs requested, and were granted, a hearing. Plaintiffs claim that notice of this hearing was sent to Mr. Warkentine, but not to Mr. Tankersly, and that the hearing notice specified a different property would be at issue than the one subject to the 2010 Notice. FAC at ¶ 33.

Plaintiffs allege that at the hearing, Defendants introduced evidence of nuisance problems at several properties owned by Plaintiffs. FAC at ¶ 35.  Plaintiffs objected to the lack of notice regarding these parcels, but the hearing proceeded over their objections. FAC at ¶ 35.  Written findings were issued March 30, 2011, accompanied by a "Notice of Nuisance and to Abate Vehicles" (Notice to Abate). FAC at ¶ 38. The Notice to Abate stated that a nuisance existed at various properties discussed at the hearing and that certain materials, including junk, trash and inoperative vehicles had to be removed within 30 days. *Id.* Plaintiffs allege that these findings were issued by Defendant Kristal Chojnacki (Mendota City Hearing Officer and City Manager). FAC at ¶ 38.

Plaintiffs allege at some point "later in 2011", Defendants "invaded" one of Mr. Tankersly's properties, without a warrant, and removed materials from the property beyond the scope of the Notice

to Abate, including personal property worth several hundred thousand dollars. FAC at ¶¶ 40, 42. Plaintiffs further allege that they were never provided an inventory of confiscated materials notice or an explanation as to how they could recover their property, and that ultimately some of their property was given to their business competitors. FAC at ¶¶ 43-46. Defendants claim that The City "conducted abatement activities" only after Plaintiffs failed to comply with the Notice to Abate. Defs.' Mem. at 2-3.

In April of 2012, The City obtained an "Inspection and Abatement Warrant" (Warrant) for four properties. FAC at ¶ 47.  Plaintiffs allege that this warrant was based on an "improperly noticed declaration" prepared by Defendant Daniel Grasserand[1] (Mendota City Code Enforcement Officer) at the direction of Mr. Soria, Ms. Chojnacki and Mr. Atkins. *Id*. Plaintiffs claim that the declaration and warrant incorrectly identified a third party and Mr. Warkentine as the owner of two properties actually owned by Mr. Tankersly. FAC at ¶ 49.

Plaintiffs allege that Defendants appeared at the properties identified in the Warrant and removed personal property outside its scope. FAC at ¶ 51. Plaintiffs further claim that although the Warrant expressly required it be posted for 24 hours prior to execution, Defendants actually served the Warrant three hours into the seizure. FAC at ¶ 49. Plaintiffs allege that a) they were never advised as to how they might recover their property, b) were never provided with a "report of abatement activities" as required by the Mendota City Code, and c) that personal property was retained by Defendants for personal use or disposed of improperly.  FAC at ¶¶ 54-57. Plaintiffs further claim that Defendants conducted a hearing which improperly determined that the value of confiscated materials was less than the costs of enforcing the abatements.  FAC at ¶ 63. Plaintiffs maintain that they have been unable to recover seized property. *Id.*

Plaintiffs originally filed charges against The City, the two rival junkyards and their owners, and fourteen individuals being sued in their official capacities as Mendota City officials (Municipal Defendants) under the Civil Rights Act of 1871 (42 U.S.C. §1983), alleging violations of the Fourth,

---

[1] Plaintiffs name "Daniel Gosserand" as a defendant, however this appears to be a misspelling of "Dan Grasserand," who was process served, Doc. 29, and to whom Defendants refer.

Fifth, and Fourteenth Amendments in September 2013. Doc. 2. The City and Municipal Defendants filed a Motion to Dismiss in February 2014. Plaintiffs were granted an additional extension of time in February and given the option to provide an amended complaint in lieu of an opposition to Motion Dismiss. Doc. 31. Plaintiffs filed a First Amended Complaint (FAC) on March 25, 2014, alleging the same claims against The City and junkyards, but now bringing charges against the Municipal Defendants in their individual capacities. Doc. 40. The City and Municipal Defendants responded with the instant Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Docs 43-44.

Defendants Abraham and Felipe Gonzalez, and Gonzalez Towing and Tire Shop, answered separately. Doc. 47. A default judgment was entered against Defendant Smitty's Towing. Doc 41. This Order will not address these defendants' liability.

## V. **STANDARD OF DECISION**

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD.*, 546 F.3d 580, 588 (9th Cir. 2008). To survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009). "The plausibility standard is not akin to a 'probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citing *Twombly,* 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line

between possibility and plausibility for entitlement to relief" *Id.* (citing *Twombly*, 550 U.S. at 557)."While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir.2003) (citation omitted).  In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984)). To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir.1990) (citations omitted).

## VI. DISCUSSION

**A.      Section 1983 Claims**

      **1.      Claims Against Individual Defendants**

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir.2006). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978). "The requisite causal connection can be established not only by some kind of direct, personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor

knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743–44. "[A]n official with no official authority over another actor can also be liable for that actor's conduct if he induces that actor to violate a third party's constitutional rights, provided that the official possesses the requisite intent, such as retaliatory animus." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012).  In general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of her office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office. *Carson v. Cnty. of Stanislaus*, 1:10-CV-02133-OWW, 2011 WL 3813193 (E.D. Cal. Aug. 29, 2011) *aff'd,* 532 F. App'x 662 (9th Cir. 2013).

Defendants seek dismissal of Plaintiffs' claims against Municipal Defendants based  on a general failure "to link any individual defendant personally to the alleged constitutional violations", claiming that Plaintiffs "must *establish* legal liability of each person…" and that "a plaintiff must *demonstrate* that each defendant personally participated in the deprivation of his rights." Doc. 44 at 7 (emphasis added).  Defendants apply an evidentiary burden prematurely. Notably, case law cited by Defendants in support of this standard concerns cases at the summary judgment phase or later. *Jones v. Williams,* for example addresses a plaintiff's burden at the pleading stage, and involved an appeal following a jury trial. 297 F.3d 930, 933–34 (9th  Cir. 2002). Similarly, defendants cite *Leer v. Murphy* for the theory that "[s]weeping conclusory allegations will not suffice . . .," leaving out the rest of the court's holding, ". . . to prevent summary judgment." 844 F.2d 628, 634 (9th Cir. 1988).

The relevant standard, articulated by *Iqbal*, is not that a plaintiff must "establish" liability, rather that he *alleges* it. *Iqbal*, 556 U.S.  at 678 (2009). ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). The Ninth Circuit has framed this standard as "alleging enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Lacey v. Maricopa Cnty.*, 693 F.3d at 924.

Plaintiffs allege that several of the Municipal Defendants were involved individually in illegal conduct. For example, Plaintiffs allege that a) Defendants Atkins, Galvin and Soria were involved with

the preparation of inadequate 2010 Notice to Abate and/or the 2010 Notice of Hearing, FAC at ¶¶ 30, 33, 36; b) Defendants Soria and Chojnacki conducted the 2010 Hearing improperly and that Ms. Chojnacki issued the March 2011 Notice to Abate based on evidence presented at this hearing, FAC at ¶¶ 35-38; c) Defendants Soria, Grasserand, Chojnacki and Atkins participated in the 2011 seizure where valuable personal property beyond the scope of the Notices to Abate was seized, and that each of these Defendants failed to provide adequate pre- or post- deprivation notice; FAC at ¶¶ 43-44; d) Defendants Soria, Grasserand, Galvin, F. Amador, Lemus and Lizarraga violated the scope of the 2012 warrant, and e) Defendants Soria, Grasserand, Chojnacki and Atkins failed to provide proper pre- and post-deprivation notice of the 2012 seizure, FAC at ¶¶ 61-63. On this basis, this Court finds that claims alleged against Defendants Atkins, Galvin, Chojnacki, Soria, Grasserand, F. Amador, Lemus and Lizarraga sufficiently allege personal conduct. The motion to dismiss for failure to allege individual liability is DENIED as to these Defendants.

Claims against Mendota City Council Members J. Amador, Capuchino, Flores, Riofrio and Silva are more attenuated. Plaintiffs claim that these defendants provided "personal direction" guiding the allegedly unconstitutional abatement proceedings and confiscation and disposal of seized property. FAC at ¶ 71. Plaintiffs further allege that J. Amador made a "public statement singling out [Plaintiffs] for desired prosecution." These statements go beyond "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements." They allege a causal link between alleged unconstitutional activities and these individuals. If the facts of all allegations are true- if city council member Defendants directed or induced law enforcement Defendants to seize property without notice and beyond the scope of warrants and notices-with the requisite level of intent- then J. Amador, Capuchino, Flores, Riofrio and Silva potentially are subject to liability under Section 1983. Thus, the motion to dismiss for failure to allege individual liability is DENIED as to these defendants.

In contrast, Plaintiffs allege no facts alleging that Defendant Korina Zamora was personally involved in the activities at issue. Thus, the motion is GRANTED WITH LEAVE TO AMEND as to any claims against Ms. Zamora.

8

### 2. Claims Against The City of Mendota

Defendants argue that Plaintiffs' claims against The City are not viable because Plaintiffs fail to allege the existence of a policy or custom that was a "moving force" behind alleged constitutional deprivations. Defs' Mem. at 5.

Municipalities and local governments can be liable for damages under Section 1983 when "action pursuant to official municipal policy of some nature cause[s] a constitutional tort." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, (1978).  Local governments are not liable, however, for simply employing a tortfeasor. *Id.* at 694-95 ("Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983).

A government entity may be liable under Section 1983 claim if a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Details of these policies need to be alleged with enough specificity to raise them beyond a "formulaic recitation of a cause of action's elements." *Id.* They must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "plausibly suggest an entitlement to relief." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

The Ninth Circuit has recognized four distinct ways[2] to demonstrate a municipal policy or custom:

> (1) "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . ."
> (2) where "the constitutional tort was the result of a longstanding practice

---

[2] Many cases combine the first two prongs.  *See, e.g. Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005). We follow the example laid out in *Price* for simplicity.

9

or custom which constitutes the standard operating procedure' of the local government entity . . ."
(3) by showing that "the tortfeasor was an official whose acts fairly represent official policy such that the challenged act constituted an official policy . ." or
(4) by showing that "an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."
*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks and citations omitted).

Liability under the first prong arises through the adoption of a formal policy, defined as "a deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-484 (1986)). Plaintiffs do not allege facts suggesting The City has adopted such a policy, thus they have not established a claim under the first prong.

A plaintiff can claim liability under the second prong by alleging that a "longstanding practice or custom" has evolved, but this requires a showing of more than "isolated or sporadic incidents." *Hunter v. Cnty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011). Rather, "the custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Id.* The line between "isolated or sporadic incidents" and "persistent and widespread conduct" is not clearly delineated, although where more than a few incidents are alleged, the determination appears to require a fully-developed factual record. *Compare Davis v. City of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir.1989) (single incident of excessive force inadequate to establish liability); *Meehan v. County of Los Angeles*, 856 F.2d 102, 107 (9th Cir.1988) (two incidents insufficient) with *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir.2005) (triable issue of fact existed as to whether Seattle had an unconstitutional policy or custom of suppressing certain political speech based on the testimony of several individuals that their entry to a particular area was permitted by police only after they removed offending buttons and stickers, coupled with the testimony of the officer in charge that the City would not permit "demonstrations" in the area).

It is unclear if Plaintiffs are attempting to assert that The City is liable under the second prong of

the analysis. Plaintiffs claim that "the City of Mendota engaged in a policy, custom or practice" of refusing to give post-deprivation notice, or, in the alternative of intentionally violating that policy. FAC at ¶ 58. But, Plaintiffs also allege that whatever policies the City had in this respect were not equally applied to them. FAC at ¶ 107. That is the basis of their Equal Protection Claim. *See* Part C, *supra*. Plaintiffs cannot have it both ways. Plaintiffs later admit that they were trying to show that Defendants' actions were "of sufficient duration, frequency and consistency that they became [their] custom and practice *when dealing with [Plaintiffs]*." Opposition, Doc. 48, at 9 (emphasis added). An allegation that one is singled out for unique, unlawful treatment is inherently incompatible with an attempt to sustain a pattern and practice claim based upon a theory that one's own experience is evidence of a widespread custom and practice. *See Engelbrecht v. Clackamas Cnty.*, 2006 WL 2927244 (D. Or. Oct. 11, 2006) (noting contrast between assertion that a practice constituted a widespread custom and allegation that plaintiff was "singled out for unique treatment"). Plaintiffs have pled themselves out of a pattern and practice claim.

      Liability under the third prong relates to the Supreme Court's holding "that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986) ("[T]he power to establish policy is no more the exclusive province of the legislature at the local level than at the state or national level."). This liability only attaches "where the decisionmaker possesses final authority to establish municipal policy *with respect to the action ordered*" and a "deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 481, 483 ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."). Whether a particular official has final policy-making authority is a question of state law. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992). This determination is necessary because Section 1983 does not encompass vicarious or supervisor liability. *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1253 (9th Cir. 2010)("[T]o hold cities liable under section 1983

whenever policymakers fail to overrule the unconstitutional discretionary acts of subordinates would simply smuggle *respondeat superior* liability into section 1983 law creating an end run around *Monell*.").

Plaintiffs allege that the unconstitutional searches and seizure were conducted at the direction of Defendants J. Amador, Capuchino, Flores, Silva and Riofrio, who were members of the Mendota City Council. FAC at ¶ 71. City Council members clearly have policy making authority. MENDOTA, CA. CODE § 2.04.040 (1995).[3] Plaintiffs further claim that these individuals directed other municipal employees to dispose of Plaintiffs' personal property. *Id.* The alleged public statement made by J. Amador (singling out Plaintiffs for prosecution) presents one way in which this directive may have been carried out. *Id.*

Paragraphs 77, 85, 100 and 109 attempt to tie these allegations into the framework of *Monell* liability:

> "Defendants were acting pursuant to an official policy; according to the City's standard operating procedures; under direction of a City official with final policy making authority; and with the later ratification by a City official when they [deprived Plaintiffs of their personal property without adequate notice, conducted search and seizures without a warrant, seized Plaintiffs property without just compensation, demonstrated a continuous and orchestrated pattern of unequal treatment]. . ."

Assuming all facts are true, and the alleged constitutional violations – searches and seizures conducted with improper notice and based on faulty warrants, and selectively enforced nuisance laws- were directed by city council members, Plaintiffs present a plausible scenario that these activities represented a "policy" level decision of The City to target them.  While short on details, these facts "give fair notice" and "enable the opposing party to defend itself effectively" under the third prong of *Monell* .

The fourth prong reflects the fact that policymakers may delegate their authority to another

---

[3] In contrast, Mendota's Municipal code precludes the City Manager from assuming any policy-making authority. MENDOTA, CA. CODE § 2.12.050 (1995). ("The city manager  . . .shall not exercise any policymaking or legislative functions whatsoever . . .").

12

official. Liability may arise "if a particular decision by a subordinate was cast in the form of a policy statement and expressly approved by the supervising policymaker ... [or] if a series of decisions by a subordinate official manifested a 'custom or usage' of which the supervisor must have been aware." *Gillette v. Delmore*, 979 F.2d at 1347 (quoting *Praprotnik*, 485 U.S. at 126, 108 S.Ct. at 926). However, a policymaker must "approve a subordinate's decision *and the basis for it* before the policymaker will be deemed to have ratified the subordinate's discretionary decision." *Id.* at 1348.

"[U]nconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983." *Id.* Because there are many factual issues tied up in a resolution of such issues, "[o]rdinarily, ratification is a question for the jury." *Christie v. Iopa*, 176 F.3d 1231, 1238-39 (9th Cir. 1999).

As discussed above, Plaintiffs present a plausible scenario that City Council members made decisions that reflected a policy of targeting Plaintiffs. Plaintiffs also allege that this policy was enacted, in part, by Council Members' failure to remediate improper behavior. FAC at ¶ 71. ("At minimum, these Defendants knew about the above-alleged constitutional violations yet deliberately and indifferently acquiesced in the conduct . . ."). On this basis, the City of Mendota may be liable under the fourth prong of the *Monell* analysis.

Thus, the motion to dismiss for failure to allege The City of Mendota's liability is DENIED.

**B.     Takings Claim**

Defendants argue that Plaintiffs' takings claims under the Fifth Amendment (Count 3) should be dismissed because they first need to avail themselves of state law remedies and be denied just compensation. Defs.' Mem. at 8.

The "Takings Clause" of the Fifth Amendment prohibits both the taking of private property for public use without just compensation and the taking of private property for private use. *Armendariz v. Penman*, 75 F.3d 1311, 1321 (9th Cir. 1996). As Plaintiffs observe, the obligation to seek compensation does not extend to cases where the taking is for a private purpose. *99 Cents Only Stores v. Lancaster Redevelopment Agency*, 60 F. App'x 123, 124 (9th Cir. 2003) ("Because 99 Cents challenged the

ordinance as authorizing a private taking, it was not required to exhaust state condemnation proceedings prior to instituting a federal action."); *Armendariz*, 75 at 1321 ("Because a 'private taking' cannot be constitutional even if compensated, a plaintiff alleging such a taking would not need to seek compensation in state proceedings before filing a federal takings claim under the rule of *Williamson County Regional Planning Comm'n . . .*").

Because Plaintiffs allege that Defendants "had no public purpose" for confiscating and disposing of their property, FAC at ¶¶ 97, there was no requirement for them to seek compensation at the state level. Thus, the motion to dismiss for failure to allege a claim under the Fifth Amendment is DENIED.

C. **Equal Protection Claims**

Defendants argue that Plaintiffs Equal Protection claims (Count 4) are not viable because they have not plead adequately the elements establishing them as a "class of one." Defs'. Mem. at 9. To succeed on a "class of one" equal protection claim, a plaintiff bears the burden to prove that: (1) he/she has been intentionally treated differently than others; and (2) there is no rational basis for the difference in treatment. *Seariver Mar. Fin. Holdings Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir.2002). The second prong of this analysis turns on "whether there is a rational basis for the *distinction,* rather than the underlying government *action*." *Gerhart v. Lake Cnty., Mont*., 637 F.3d 1013, 1023 (9th Cir. 2011)(emphasis in original).

The Ninth Circuit holds that to establish a viable claim, a plaintiff "need only allege some facts, either anecdotal or statistical, demonstrating that similarly situated defendants ... could have been prosecuted, but were not." *Lacey v. Maricopa Cnty*., at 920. Plaintiffs must also present a claim that is "plausible on its face" that Plaintiffs were singled out for persecution without a rational basis. *Cooper v. Clark Cnty., Nevada*, 519 F. App'x 479, 481 (9th Cir. 2013).

Plaintiffs allege that they are situated similarly to Defendants Smitty's Towing and Gonzales Towing in that they operated similar businesses in close proximity. FAC at ¶ 65. Plaintiffs claim that these companies were preferentially granted conditional use permits which were denied to Plaintiffs; though all companies were located in the same municipal zone. FAC at ¶ 68. Plaintiffs further claim

they were targeted for prosecution for the benefit of these rival companies. FAC at ¶ 69. These allegations present a plausible scenario that plaintiffs were similarly situated, but treated differently from the rival junkyard operators without a rational basis underlying the distinction. Defendant's motion to dismiss the Equal Protection claim is DENIED.

## VII. **CONCLUSION AND ORDER**

For the reasons discussed, above the Court GRANTS Defendants' Motion to Dismiss as to Korina Zamora, but DENIES Defendants Motion to Dismiss as to all other Defendants. The Court also ORDERS Plaintiff to amend its Complaint, for the limited purpose described above, within FOURTEEN DAYS of entry of this order. This will be the last opportunity to amend. This court does not have the resources to review and write extensive orders on how to write, rewrite and submit pleadings. This order gives the proper direction for the last time.

IT IS SO ORDERED.

Dated:   **May 19, 2014**                    /s/ Lawrence J. O'Neill
                                             UNITED STATES DISTRICT JUDGE